# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| REGINALD KELLEY, | ) |
| Plaintiff, | ) |
| | ) Case No. 14 C 1936 |
| v. | ) |
| MARCUS HARDY, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On August 6, 2015, Plaintiff Reginald Kelley, an inmate of the Illinois Department of Corrections ("IDOC"), filed the present two-count First Amended Complaint, by counsel, alleging that Defendants Saleh Obaisi, M.D. ("Dr. Obaisi") and Dr. Obaisi's employer, Defendant Wexford Health Sources, Inc. (collectively "Wexford Defendants"), violated his Eighth Amendment rights in relation to his medical care while he was incarcerated at Stateville Correctional Center ("Stateville"). Plaintiff further alleges that certain IDOC employees, namely, Defendants Marcus Hardy, Darryl Edwards, Ralph Burkeybile, Gail Sessler, and Bobby Mattison (collectively "IDOC Defendants") violated his Eighth Amendment rights concerning the conditions of his confinement.

Before the Court is the IDOC Defendants' and the Wexford Defendants' motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1. For the following reasons, the Court grants Defendants' motions and dismisses this lawsuit in its entirety.

# BACKGROUND

## I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted).

The purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Zimmerman v. Doran,* 807 F.3d 178, 180 (7th Cir. 2015); *see also Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the

moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.,* 807 F.3d 215, 218 (7th Cir. 2015) (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015). Moreover, "[t]o be considered on summary judgment, evidence must be admissible at trial," *Cairel v. Alderden,* 821 F.3d 823, 830 (7th Cir. 2016), and "[m]ere allegations in a complaint [] are not 'evidence' and do not establish a triable issue of fact." *See Brown v. Advocate S. Suburban Hosp.,* 700 F.3d 1101, 1105 (7th Cir. 2012); *see also Reed v. Allied Waste Transp., Inc.,* 621 F. App'x 345, 347 (7th Cir. 2015) (unpublished) ("unsworn allegations are not evidence"). With these standards in mind, the Court turns to the relevant facts of this lawsuit.

## II.     Relevant Facts

### A.     Parties

Plaintiff has been incarcerated at Stateville since 2006. (R. 80, IDOC Defs.' Stmt. Facts ¶ 2.) Defendant Marcus Hardy served as Stateville's Warden from December 1, 2009 to January 1, 2013. (*Id.* ¶ 3.) Defendant Daryl Edwards was the Assistant Warden at Stateville from September 1, 2010 to August 15, 2012. (*Id.* ¶ 4.) In 2012 and 2013, Defendant Gail Sessler was the Educational Facility Administrator at Stateville. (*Id.* ¶ 5.) During the relevant time period, Defendant Ralph Burkybile was a correctional officer at Stateville and Defendant Bobby Mattison was the barbershop instructor at Stateville. (*Id.* ¶¶ 6, 7.) Defendant Saleh Obaisi is a licensed physician in the State of Illinois and has been the Medical Director at Stateville since August 2012. (R. 85, Wexford Defs.' Stmt. Facts ¶ 8.) Defendant Wexford is a private

3

corporation that has contracted with the IDOC to provide medical services to inmates at various correctional facilities in Illinois, including Stateville.

**B.     Plaintiff's Work**

In 2008, Plaintiff signed up for Stateville's barber college program that Defendant Mattison teaches. (IDOC Def.'s Stmt. Facts ¶ 8.) The barber program requires 1,500 hours of training time, which Plaintiff completed in two years. (*Id*.) After completing the barber college program, Plaintiff obtained a job as a barber in the F-House cellblock at Stateville in April 2010. (*Id*. ¶ 9.) Plaintiff worked as a barber in F-House from 8:30 a.m. to 1:30 p.m., seven days per week, and earned $43.20 per month over the course of his employment. (*Id*. ¶¶ 10, 11.) It is undisputed that Plaintiff was not required to have a job while incarcerated at Stateville. (*Id*. ¶ 12.) When he cut hair in F-House, Plaintiff generally worked with one or two other inmate barbers and his supervisors were the correctional officers assigned to the F-House cellblock. (*Id*. ¶¶ 13, 14; R. 93, Pl.'s Stmt. Add'l Facts ¶ 52.) On the other hand, Defendant Mattison was Plaintiff's supervisor when Plaintiff worked at Stateville's barbershop, which is located at the back of Stateville. (IDOC Defs.' Stmt. Facts ¶¶ 15, 16; R. 80-2, Ex. B, Pl.'s Dep., at 12.)

Inmate barbers at Stateville use two types of equipment – clippers and trimmers. (*Id*. ¶ 24.) At the time of the incident underlying this lawsuit, there were three pairs of clippers and two pairs of trimmers kept at the F-House armory. (*Id*. ¶¶ 17, 27.) Plaintiff testified at his deposition that there were always problems with the hair trimmers and that he made multiple complaints about the defective hair trimmers. (Pl.'s Stmt. Facts ¶¶ 49, 50; Ex. B, Pl.'s Dep., at 17-18.) At his deposition, Defendant Mattison testified that no one person is responsible for the condition of the barber equipment in each cell house, but that he helps out with it. (IDOC Defs.'

4

Stmt. Facts ¶ 18, R. 80-3, Ex. C, Mattison Dep., at 15.) More specifically, Defendant Mattison testified that when the equipment needs repair, he tries to help out, and that there is an inmate, with experience in electrical matters, who repairs the equipment. (*Id*. ¶¶ 18, 19; Ex. C, Mattison Dep., at 16.) Mattison further testified that, sometimes, if the trimmers' cords need fixing, the repairman would use electrical tape so that the wires would not be exposed. (Pl.'s Stmt. Facts ¶ 51; Ex. C, Mattison Dep., at 27.) Mattison further testified that he did not expect anyone to use barber equipment with exposed wires. (IDOC Defs.' Stmt. Facts ¶ 21; Ex. C, Mattison Dep., at 36.) It is undisputed that once the equipment is repaired, staff inspects it to ensure that it is in working order. (*Id.* ¶ 20.)

### C. Plaintiff's Injury and Medical Treatment

On January 20, 2013, despite knowing that he was using defective hair trimmers, Plaintiff was injured while cutting hair at F-House. (*Id*. ¶¶ 25, 31; R. 85, Wexford Defs.' Stmt. Facts ¶ 11; Pl.'s Stmt. Facts ¶ 53.) In particular, Plaintiff testified at his deposition that on January 20, 2013 the hair trimmers emitted sparks that burned his right hand and shocked him. (IDOC Defs.' Stmt. Facts ¶ 32; Pl.'s Stmt Facts ¶ 57; Ex. B, Pl.'s Dep., at 23.) Plaintiff specifically testified that the burn on his right hand was about the size of a quarter. (Wexford Defs.' Stmt. Facts ¶ 12.) Also, Plaintiff asserts that as a result of the shock, his heart was racing, but after the Health Care Unit discharged him and he returned to F-House, his heart stopped racing. (*Id*. ¶¶ 29, 32.)

After the hair trimmers shocked Plaintiff, correctional officers immediately took Plaintiff to the Health Care Unit where Defendant Dr. Obaisi promptly treated him. (IDOC Defs.' Stmt. Facts ¶¶ 33, 42; Wexford Defs.' Stmt. Facts ¶ 16.) After examining Plaintiff, Dr. Obaisi

5

prescribed hydrocortisone cream for treating the burn on his right hand and Neurontin, 200 mg, to be taken twice a day for thirty days, for pain management, including Plaintiff's self-reported pain in his arm. (*Id.* ¶¶ 14, 15, 21, 22.) Plaintiff received and used both the hydrocortisone cream and Neurontin after his January 20, 2013 examination. (*Id*. ¶¶ 17, 27.)

Plaintiff suffered constant pain for approximately two weeks after the January 20, 2013 incident and then suffered pain on and off again for a few weeks after that. (IDOC Defs.' Stmt. Facts ¶ 44; Pl.'s Stmt. Facts ¶ 59.) It is further undisputed that Plaintiff returned to his work as a barber two days after his injury. (IDOC Defs.' Stmt. ¶ 40.) Also, at his deposition, Plaintiff testified that he used hydrocortisone cream and took the Neurontin and that his injury and associated pain had been resolved, including that there were no scars or visible marks from the burn, and that the pain had subsided. (Wexford Stmt. Facts ¶ 27.)

Prior to the January 20, 2013 incident, medical staff at Stateville regularly evaluated Plaintiff for hypertension. (Wexford Defs.' Stmt. Facts ¶ 33.) After the January 2013 incident, specifically on April 12, 2013, medical staff conducted Plaintiff's annual physical examination, at which time staff conducted a neurological examination showing that Plaintiff was within normal limits. (*Id*. ¶¶ 34, 35.) During the April 2013 physical, Plaintiff did not have any chest-related complaints or complaints about the burn on his right hand, although Plaintiff testifies that he repeatedly complained to staff about the numbness in his right hand. (*Id.* ¶ 35, Pl.'s Stmt. Facts ¶ 61.) Thereafter, on July 5, 2015, health care staff at the hypertension clinic evaluated Plaintiff. (Wexford Stmt. Facts ¶ 36.) At that time, Plaintiff's vitals were normal and the lab records did not indicated anything abnormal. (*Id*.) According to Plaintiff, however, medical staff did not assess or treat the numbness in his right hand. (Pl.'s Stmt. Facts ¶ 63; Ex. B, Pl.'s

Dep., at 44.) Since the January 2013 incident, Plaintiff has continued to engage in activities requiring the use of his hands, including cutting hair, and he testified that his right hand does not bother him. (Wexford Defs.' Stmt. Facts ¶¶ 39, 40.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015).

## ANALYSIS

**I.     Eighth Amendment Medical Care Claim Against Wexford Defendants**

In his First Amended Complaint, Plaintiff alleges that Defendants were deliberately

indifferent to his serious medical needs in relation to his injuries resulting from the hair trimmers shocking him on January 20, 2013. "A prison official may be found in violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [his] serious medical needs.'" *Conley v. Birch,* 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Deliberate indifference claims contain both an objective and a subjective component, namely, the inmate must have an objectively serious medical condition and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Burton v. Downey,* 805 F.3d 776, 784 (7th Cir. 2015).

A "prisoner's medical need is 'serious' where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008) (citation omitted). Put differently, an objectively serious medical condition is the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 523 (citation omitted). In short, a "medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

With respect to the subjective component of the deliberate indifference test, a plaintiff must show that the defendant was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015). "Deliberate

8

indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio,* 792 F.3d 768, 777 (7th Cir. 2015) (internal citations omitted). "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining deliberate indifference claims, courts examine the totality of the inmate's medical care. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000).

Construing the facts and all reasonable inferences in his favor, Plaintiff has presented evidence establishing the objective component of his deliberate indifference claim in relation to his right hand burn and the attendant pain in his hand and arm associated with the electrical shock because Stateville medical personnel, including Dr. Obaisi, diagnosed and treated these injuries. *See McDonald v. Hardy,* 821 F.3d 882, 888 (7th Cir. 2016); *Pyles,* 771 F.3d at 409.

As to the subjective component of the deliberate indifference test, the undisputed facts show that after the hair trimmers shocked Plaintiff resulting in a burn to his right hand, as well as pain to his hand and arm, Stateville staff immediately took him to the Health Care Unit where Dr. Obaisi promptly treated Plaintiff by prescribing hydrocortisone cream for his right hand burn and a thirty-day prescription of Neurontin for pain management. It is also undisputed that Plaintiff confirmed that his burn healed and that the attendant pain lasted no more than one month. Specifically, Plaintiff testified that he used two tubes of the hydrocortisone cream after which the burn stopped hurting. (Ex. B, Pl.'s Dep., at 29.) Plaintiff further testified that the pain

9

he experienced as a result of the shock lasted about a month. (*Id*. at 31.)

Nonetheless, in response to the Wexford Defendants' summary judgment motion, Plaintiff argues that there is a genuine issue of material fact for trial whether the Wexford Defendants were deliberately indifferent to his complaints of numbness in his right hand and his rapid heart rate. As discussed above, Plaintiff asserts that as a result of the shock, his heart was racing, but undisputed evidence in the record, namely Plaintiff's own deposition testimony, indicates that after the Health Care Unit discharged him and he returned to F-House on the day of the incident, his heart stopped racing. Moreover, at his annual physical examination on April 12, 2013, Plaintiff did not make any chest-related complaints and Plaintiff's visit to the hypertension clinic in July 2013 reveals that Plaintiff's vitals were normal.

Plaintiff nevertheless takes issue with the fact that Dr. Obaisi or other Wexford health care staff did not conduct or order diagnostic tests concerning his rapid heartbeat. Under the circumstances, Plaintiff's argument does not establish deliberate indifference because neither medical malpractice nor a disagreement with a physician's medical judgment support an Eighth Amendment deliberate indifference claim. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *McDonald,* 821 F.3d at 888 ("an inmate claiming a violation of the Eighth Amendment must do more than show negligence, medical malpractice, or disagreement with a prescribed course of treatment"). To clarify, it is well-established that "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood,* 512 F.3d 886, 894-95 (7th Cir. 2008) (citation omitted). Here, Plaintiff has failed to argue, let alone establish, that Dr. Obaisi's decision not to order

diagnostic tests for Plaintiff's rapid heartbeat was "a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 895; *see also Pyles,* 771 F.3d at 409 ("The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment."). Indeed, Dr. Obaisi's and the health care staff's "decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles,* 771 F.3d at 411 (quoting *Estelle*, 429 U.S. at 107). Therefore, Plaintiff's argument based on Dr. Obaisi's failure to order diagnostic tests does not create a genuine issue of fact for trial.

Next, as to the numbness in Plaintiff's right hand, he argues that he submitted numerous "sick call" slips and letters requesting follow-up care after his January 20, 2013 incident regarding his injuries, including the numbness in his right hand, yet nothing was done. (Pl.'s Stmt. Facts ¶¶ 47, 48, 50.) Specifically, Plaintiff testified that he believes that the numbness in his right hand was a result of the hair trimmers shocking him. (Ex. B, Pl.'s Dep., at 41-42.) He also testified that his right hand is numb once or twice a month and that the numbness lasts for a few minutes. (*Id*. at 47-48.) It is undisputed, however, that despite the numbness, Plaintiff resumed his job as a barber two days after the January 2013 incident, that he continues to engage in activities requiring the use of his hands, and that his right hand does not bother him. (Wexford Stmt. Facts ¶¶ 39, 40.)

Assuming Plaintiff submitted requests for follow-up care concerning the numbness in his right hand and that the Wexford Defendants ignored these requests, Plaintiff's admission that his

right hand does not bother him or impede his ability to engage in activities requiring the use of his hands vitiates the seriousness of his medical condition. More specifically, based on Plaintiff's admissions that his right hand does not bother him and that he engages in multiple activities requiring the use of his hands, including his daily barbershop duties, the numbness in his right hand does not significantly affect his daily activities nor does it cause him chronic and substantial pain. *See Hayes,* 546 F.3d at 523; *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Furthermore, Plaintiff has failed to submit medical evidence that any alleged delay in treating the numbness in his right hand worsened the pain or condition. *See Knight v. Wiseman,* 590 F.3d 458, 466 (7th Cir. 2009) (action based on delay "will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay."). Thus, Plaintiff has failed to present evidence raising a triable issue of fact that the numbness in his right hand – or the delay in treating the numbness – amounts to an objectively serious medical condition.

On a final note, Plaintiff attempts to establish Wexford's liability by arguing that Wexford has an unlawful policy as evidenced by the medical staff never receiving his numerous complaints about the numbness in his right hand, among other complaints. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Specifically, Plaintiff bases his argument on the premise that Wexford does not keep patients' medical records or requests – ignoring the fact that the IDOC maintains these records. Plaintiff also takes issue with the fact that Dr. Obaisi or other Wexford staff did not see him within 72 hours of his requests in violation of Wexford's policy. It is well-established, however, that a violation of a state actor's policies or regulations "is completely immaterial as to the question of whether a

violation of the federal constitution has been established." *Thompson v. City of Chicago,* 472 F.3d 444, 454 (7th Cir. 2006). Therefore, viewing the facts and all reasonable inferences in his favor, Plaintiff's unsubstantiated (and undeveloped) argument fails to defeat summary judgment against Wexford because he has not set forth triable issues of fact that Wexford has a custom or policy that deprived him of his constitutional rights. *See Rossi v. City of Chicago,* 790 F.3d 729, 737 (7th Cir. 2015); *King v. Kramer,* 763 F.3d 635, 649 (7th Cir. 2014). The Court therefore grants the Wexford Defendants' summary judgment motion.

## II. Eighth Amendment Conditions of Confinement Claim Against IDOC Defendants[1]

Next, Plaintiff maintains that the IDOC Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they knowingly supplied defective barbershop equipment that posed a substantial risk of serious harm. An Eighth Amendment violation based on the conditions of an inmate's confinement occurs when "(1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of 'the minimal civilized measure of life's necessities,' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, ___ F.3d ___, 2016 WL 3457647, at *2 (7th Cir. June 24, 2016) (quoting *Farmer*, 511 U.S. at 834). Under the first deliberate indifference requirement, an "adverse condition amounts to a constitutional deprivation when it results in the denial of a basic human need," including the lack of "adequate food, clothing, shelter, and medical care." *Smith v. Dart,* 803 F.3d 304, 309-10 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 832); *see also Smith v. Sangamon Cnty. Sheriff's Dept.,* 715 F.3d

---

[1] In his response brief, Plaintiff concedes that Defendant Gail Sessler did not violate his Eighth Amendment rights in relation to his conditions of confinement claim.

188, 191 (7th Cir. 2013) ("Depriving a prisoner of 'basic human needs like food, medical care, sanitation, and physical safety' violates the Eighth Amendment") (citation omitted). To establish the subjective component of deliberate indifference, Plaintiff must show that each prison official "realizes that a substantial risk of serious harm to a prisoner exists, but disregards it." *Perez,* 792 F.3d at 781. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In their summary judgment motion, the IDOC Defendants argue that the condition of the hair trimmers does not meet the objective component of the deliberate indifference standard because the malfunctioning hair trimmers did not amount to a sufficiently serious denial of a basic human need nor pose a substantial risk of serious harm. *See Smith,* 803 F.3d at 309 ("conditions must be objectively serious enough to amount to a constitutional deprivation"). A sufficiently serious risk is one that society considers "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (emphasis in original); *see also Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004).

The defective trimmers that shocked Plaintiff do not amount to a sufficiently serious risk of harm under this standard. Under Eighth Amendment jurisprudence, prison officials have an affirmative duty to provide humane prison conditions, including taking reasonable measures to guarantee inmate safety, based on the premise that, once incarcerated, inmates rely upon prison officials to meet their basic needs due to their confinement. *See Farmer,* 511 U.S. at 832-33; *Estelle,* 429 U.S. at 103. When an inmate voluntarily puts himself into an unsafe situation, the

line between a prison official's duty and an inmate's responsibility becomes blurred. *See Smith,* 803 F.3d at 313-14; *see also Legate v. Livingston,* 822 F.3d 207, 210 (5th Cir. 2016) ("a prisoner cannot establish [an Eighth Amendment] violation where he willingly participates in the conduct giving rise to his injury.") (collecting cases). To clarify, in *Smith*, the Seventh Circuit concluded that a pretrial detainee, who voluntarily participated in a job program, failed to allege a deliberate indifference claim based on his working conditions because he voluntarily undertook the job at the Cook County Jail's laundry.[2] *See id.* at 313-14. Here, Plaintiff voluntarily trained and worked as a prison barber for approximately eight years, during which he was shocked once by hair trimmers that he knew were defective. *See Morissette v. Peters,* 45 F.3d 1119, 1123 (7th Cir. 1995) (per curiam) (exposure to wires over a nine day period resulting in electrical shock was "minor hazard that was easily avoided"); *Wronke v. Champaign Cnty. Sheriff's Office*, 132 F. App'x 58, 61 (7th Cir. 2005) (unpublished) (plaintiff "cannot manufacture a constitutional claim by volunteering for a job when he could have avoided the offending conditions by choosing to stay in his cell."). Further, there is no evidence in the record supporting a reasonable inference that IDOC staff forced or compelled Plaintiff to use the defective trimmers. In fact, there is evidence in the record supporting the opposite inference, namely, Mattison's testimony that he did not expect anyone to use barber equipment with exposed wires.[3] Also, under

---

[2] "[T]here is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions of confinement claims, and [] claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment test." *Smith v. Dart,* 803 F.3d 304, 310 (7th Cir. 2015).

[3] Plaintiff's argument that he was compelled to use the trimmers for fear of losing his job fares no better because the loss of his job does not amount to punishment in a constitutional sense. *See Smith v. Dart,* 803 F.3d 304, 314-15 (7th Cir. 2015).

15

contemporary standards of decency, defective hair trimmers are not a sufficiently serious risk of harm for purposes of the Eighth Amendment's prohibition against cruel and unusual punishment because being shocked by faulty electrical equipment is the type of risk individuals in society voluntarily encounter when using household electrical appliances, such as hair dryers or space heaters. *Cf. Christopher,* 384 F.3d at 882; *McNeil v. Lane,* 16 F.3d 123, 125 (7th Cir. 1993). Therefore, Plaintiff has not established the first prong of the deliberate indifference standard.

As to the subjective component of the deliberate indifference test, at this procedural posture, Plaintiff must present evidence raising a triable issue of fact that each IDOC Defendant was aware that the faulty trimmers were a substantial risk of serious harm, but disregarded the risk. *See Farmer,* 511 U.S. at 844 ("prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment"); *Perez,* 792 F.3d at 781. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Indeed, "deliberate indifference demands more than a showing of mere negligence." *Conley,* 796 F.3d at 746; *see also Farmer,* 511 U.S. at 835 ("deliberate indifference entails something more than mere negligence"); *Smith,* 715 F.3d at 191 ("Depriving a prisoner of 'basic human needs like food, medical care, sanitation, and physical safety' violates the Eighth Amendment, but only if the defendant acted with deliberate indifference to the prisoner's serious needs; negligence is not enough.") (citation omitted).

Examining the facts and all reasonable inferences in Plaintiff's favor, he has set forth evidence that he told Defendants Hardy, Edwards, and Mattison about the faulty hair trimmers. (IDOC Defs.' Stmt. Facts ¶¶ 36, 37, 39.) There is also evidence in the record that Defendant

Burkybile was aware of the faulty trimmers and tried to get a new pair for the F-House. (*Id.* ¶ 35.) Evidence also shows that Defendants sent the trimmers to be repaired on several occasions after Plaintiff's complaints. (*Id.* ¶¶ 34, 36, 37, 39; Ex. B, Pl.'s Dep., at 16, 20-21.) Further, Defendant Mattison helped in repairing the trimmers and an inmate with experience in electrical matters repaired the trimmers. (*Id.* ¶¶ 18, 19.) As to the exact trimmers that shocked Plaintiff, Defendant Mattison testified that the repairman gave the trimmers some oil and taped up the cord stating there was nothing more he could do. (Pl.'s Stmt. Facts ¶ 65.) Despite this unsuccessful attempt at repairing the trimmers at issue, because Defendants reasonably responded to the defective hair trimmers by requesting to have them repaired or facilitating their repair, Plaintiff has failed to present a triable issue of fact that Defendants' conduct is more than negligence under the circumstances. *See Farmer,* 511 U.S. at 835, 844; *see, e.g., Wilkins v. Merkle,* No. 13 C 375, 2015 WL 5544312, at *6 (N.D. Ill. Sept. 18, 2015) (prison official who placed work orders to have plumbing repaired responded reasonably to risk); *Mims v. Hardy,* No. 11 C 6794, 2013 WL 2451149, at *12 (N.D. Ill. June 5, 2013) (same). In other words, construing the facts in Plaintiff's favor, although Defendants could have done a better job in maintaining the barbershop equipment, Defendants' conduct does not amount to the reckless disregard of a substantial risk to Plaintiff's safety. *See Perez,* 792 F.3d at 777-76. The Court therefore grants the IDOC Defendants' summary judgment motion.

## CONCLUSION

For these reasons, the Court grants the Wexford Defendants' and IDOC Defendants' motion for summary judgment.

**Dated:** July 14, 2016

                                                        **ENTERED**

                                                   **AMY J. ST. EVE**
                                                 **United States District Court Judge**